**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**JOHN ODLAND**, *et al.*,               )
                                        )
              **Plaintiffs,**            )
                                        )
       **v.**                            )        **Civil Action No. 13-141 (RMC)**
                                        )
**FEDERAL ENERGY REGULATORY**            )
**COMMISSION,**                          )
                                        )
              **Defendant.**             )
_____         )

## OPINION

Plaintiffs John Odland and Michael Mojica sue the Federal Energy Regulatory Commission (FERC) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the release of records concerning FERC's review and approval of an application for a certificate of necessity and convenience for the construction of a compressor station by Millennium Pipeline Company. The compressor station will be built near Plaintiffs' homes. FERC moved for summary judgment, and the motion will be granted.

## I. FACTS

Millennium Pipeline Company (Millennium) owns a natural gas pipeline system that runs across southern New York. The pipeline is subject to the jurisdiction of FERC under the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.* Millennium applied for a certificate of public convenience and necessity from FERC to build a 12,260 horsepower compressor station for the purpose of facilitating the flow of the natural gas through the pipeline. The proposed compressor station would be located "within several hundred yards" of Plaintiffs' homes in Minisink, New York. Cross Mot. for Summ. J. (Cross MSJ) [Dkt. 14] at 7. Plaintiffs object to the project, alleging that the compressor station will be toxic, hazardous, and noisy. *Id*. at 9. On July 17,

1

2012, FERC granted the certificate of public convenience and necessity. *See* Cross MSJ, Ex. 2A[1] (FERC Docket No. CP11-515, Order Issuing Certificate, 140 FERC ¶ 61,045 (July 17, 2012)). On December 5, 2012, FERC denied and dismissed a petition for rehearing, stating that "Commission advisory staff did not produce independent 'evidence' to be used by the Commission as a basis for its decisions." *Id.*, Ex. 2B (FERC Docket No. CP11-515, Order Denying and Dismissing Requests for Reh'g, 141 FERC ¶ 61,198, ¶ 73, n.111 (Dec. 5, 2012)). Plaintiffs then filed a petition for review of FERC's order. *See Minisink Residents for Environmental Preservation & Safety v. FERC*, Case No. 12-1481 (D.C. Cir. 2013).[2]

The FERC proceeding generated a large public record, including an Environmental Assessment, *see* FERC Exhibits, Tao Decl. [Dkt. 12-1] ¶ 6, as well as the FERC Orders cited above, *i.e.*, the Order Issuing the Certificate and the Order Denying and Dismissing Requests for Rehearing. Hoping that additional FERC records will assist them in their opposition, Plaintiffs seek disclosure of records related to Millennium's application that are not in the public record. To obtain these records, Mr. Odland sent one FOIA request to FERC and Mr. Mojica sent two FOIA requests to FERC, as described below. Their requests were overlapping.

## A. Mr. Odland's Request FY12-33

On March 7, 2012, Mr. Odland submitted a FOIA request and on March 14, 2012 he amended it. As amended, the request sought: all email and correspondence between FERC staff and between FERC staff and Millennium related to the compressor station proceeding; all hydraulic analyses and models submitted by Millennium; draft proposals and recommendations

---

[1] As part of Plaintiffs' cross motion for summary judgment, Plaintiffs filed Exhibits 1 through 5. *See* Pls. Exhibits [Dkt. 14-2].

[2] *Minisink* is scheduled for oral argument before the Circuit on May 1, 2014.

relating to the Environmental Assessment; studies submitted by Millennium; and lists of landowners near the project. *Id.* ¶ 15. FERC assigned the FOIA request tracking number FY12-33 and began to search and release documents on a rolling basis. According to the Declaration of Leonard Tao, Director of the Office of External Affairs at FERC, FERC released forty-seven documents on April 25, 2012. Tao Decl. ¶ 19. On June 4, 2012, FERC withheld five documents, which were hydraulic models. *Id.* ¶ 21. Rolling production continued. On July 27, 2012 FERC released fifty-five documents, *see id.* ¶ 23, and on September 28, 2012, it released twenty-seven documents, *see id.* ¶ 25. The fifth and final response to Mr. Odland's Request FY12-33 was issued on November 8, 2012: FERC released eighty-three documents, forty-nine of which were redacted pursuant to Exemption 5 or 6, and it withheld 575 documents based on Exemptions 3, 4, 5, 6, and 7(F). *Id.* ¶ 27. In the November 8, 2012 notice, FERC notified Mr. Odland of his appeal rights, *i.e.*, that under 18 C.F.R. § 388.110(a)(1), "any appeal from this determination must be filed within 45 days of the date of this letter." FERC Exhibits, Ex. 11 [Dkt. 12-13] (Nov. 8, 2012 letter from FERC to Odland) at 8.

    Mr. Odland appealed the June 4 decision withholding a hydraulic model, and that appeal was denied. Tao Decl. ¶¶ 22, 24. Mr. Odland also separately appealed the withholding of documents under FOIA Exemptions 3, 5, and 6. The withholding under Exemption 3 was reversed and that document, a cultural resource report, was released. *Id.* ¶ 30. Eleven documents that had been withheld under Exemption 5, as applicable to the deliberative process privilege, were ordered released in part, with portions redacted pursuant to Exemption 5. *Id.*

The Exemption 6 withholding of names, addresses and personal information of landowners was upheld. *Id.*[3]

**B. Mr. Mojica's Request FY12-60**

On June 29, 2012, Mr. Mojica sent a FOIA request to FERC seeking some of the same documents that Mr. Odland sought, as well as other records. Mr. Mojica requested, *inter alia*, email and correspondence among FERC staff, email and correspondence between FERC staff and Millennium, landowner lists, and background information on FERC employees. *Id.* ¶ 36. FERC labeled this Request FY12-60. On August 10, 2012, FERC notified Mr. Mojica that it would release documents on a rolling basis and it released twenty-eight documents, thirteen of which were redacted pursuant to the personal privacy interest protected by FOIA Exemption 6. *Id.* ¶ 39. FERC also notified Mr. Mojica that pursuant to 18 C.F.R. 388.110(a)(1), "any appeal from this determination must be filed within 45 days of the date of this letter." FERC Exhibits, Ex. 19 [Dkt. 12-21] (Aug. 10, 2012 letter from FERC to Mojica) at 5. Mr. Mojica did not appeal the August 10 decision and did not wait for a final release, but instead filed this lawsuit on February 4, 2014.

On March 20, 2013, FERC issued its final response to FY12-60, and released sixty-four documents, forty-nine of which were redacted in accordance with Exemption 5 (deliberative process privilege) and Exemption 6 (personal privacy). *Id.* ¶ 43. Five hundred fifty-four documents were withheld via Exemption 5. *Id.*[4]

_____

[3] Subsequently, FERC discovered nineteen documents that had been inadvertently omitted. FERC disclosed eleven in full and redacted eight under Exemption 5. Tao Decl. ¶ 32.

[4] As a courtesy, FERC notified Mr. Mojica that there were 1,200 documents in the public record related to Millennium's proposed compressor, and FERC sent Mr. Mojica over three hundred of these. Tao Decl. ¶¶ 40, 43. On May 13, 2013, FERC released to Mr. Mojica an additional fifteen documents responsive to Request FY12-60 that it had inadvertently omitted; five of these were redacted under Exemption 5. *Id.* ¶ 46.

### C. Mr. Mojica's Request FY12-66

On August 10, 2012, Mr. Mojica sent another FOIA request to FERC, this time asking for the all studies and analysis performed by FERC staff of Millennium's hydraulic data, as well as privileged documents submitted by Millennium as Accession No. 20120730-5151. *Id.* ¶ 48. FERC assigned the tracking number FY12-66. On September 7, 2012, FERC provided public documents as a courtesy and continued to process the request on a rolling basis. *Id.* ¶ 52. On November 20, 2012, FERC withheld the following: a cultural resource report; five hydraulic models; a Compressor Station Site Plan; a response to FERC data requests dated November 22, 2011; and FERC staff draft analyses of Millennium models. FERC invoked FOIA Exemptions 3, 4, 5, and 7(F). *Id.* ¶ 54. FERC also notified Mr. Mojica of his right to appeal within 45 days, under 18 C.F.R. 388.110(a)(1). FERC Exhibits, Ex. 26 [Dkt. 12-28] (Nov. 20, 2012 letter from FERC to Mojica) at 7. Mr. Mojica appealed the assertion of Exemptions 3 and 5, but did not appeal the assertion of Exemption 4 or 7(F). Tao Decl. ¶ 55. The Office of General Counsel required that the cultural resource report be released as non-exempt under Exemption 3, but upheld the application of Exemption 5. *Id.* ¶ 56.[5]

### D. CEII Requests for Records Withheld under Exemption 7(F)

The records that FERC withheld solely pursuant to Exempt 7(F) constituted Critical Energy Infrastructure Information (CEII). Requesters can elect to seek such information through FERC's separate CEII request process. *See* 18 C.F.R. § 388.113. CEII material may be released to a requester with a legitimate need for the information so long as the requester signs a non-disclosure agreement. *Id.* Through the CEII process, Plaintiffs were able to obtain

---

[5] FERC later determined that it mistakenly omitted one document responsive to Request FY12-66, but the document could be obtained by Plaintiffs because determined that it is publically available in FERC's eLibrary. Tao Decl. ¶ 58.

hydraulic model information (the same hydraulic information sought in FOIA requests FY12-33

and FY12-66) as well as other technical material and confidential commercial information.  Tao

Decl. ¶¶ 60-61; Cross MSJ at 11.

**E.  This Suit and Documents No Longer in Contention**

Messrs. Odland and Mojica filed this suit in February 2013, seeking disclosure of

the exempt documents.  Millennium filed an unopposed motion to intervene, which was granted.

*See* Minute Order Feb. 21, 2013.  FERC moved for summary judgment, *see* FERC Mot. for

Summ. J. (MSJ) [Dkt. 11], and Plaintiffs filed a cross motion for summary judgment/opposition,

*see* Cross MSJ; Opp'n [Dkt. 14].

Subsequently, the parties conferred and agreed to narrow the scope of documents

in contention.  As a result, the following documents are no longer in dispute:

Hydraulic models of Millennium's pipeline system;

Material from a compressor manufacturer, Solar Turbines;

Cultural Resource Reports;

Rate and accounting documents;

Documents relating to internal agency review of comments submitted by the public in the proceeding;

Intra-agency emails discussing data requests and draft data requests; and

Intra-agency emails discussing Millennium's responses to data requests.

*See* FERC Reply [Dkt. 21] at 2-3; *id*., Supp. Tao Decl. [Dkt. 21-1] ¶¶ 4-8; Millennium Reply

[Dkt. 19] at 1-3[6]; Pls. Surreply [Dkt. 25-1] at 2, 11-13.  With regard to the records withheld in

---

[6] FERC filed its brief as a Reply at docket 21 and also filed the same document at docket 22 as an opposition to Plaintiffs' cross motion; Millennium filed a Reply in support of FERC's motion

whole or in part, FERC filed three amended Vaughn[7] indices.  *See* FERC Reply, Ex. 2 (FY12-33 Vaughn Index) [Dkt. 21-2], Ex. 3 (FY12-60 Vaughn Index) [Dkt. 21-3]; Ex. 4 (FY12-66 Vaughn Index) [Dkt. 21-4].[8]  As described below, other documents that were withheld in whole or in part remain in dispute.  *See generally* Pls. Surreply.  Plaintiffs do not challenge the adequacy of FERC's search for the requested records; instead, they challenge certain asserted exemptions to disclosure.

## II.  LEGAL STANDARD

### A.  Summary Judgment

FERC contends that it is entitled to summary judgment because there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

---

for summary judgment at docket 19 and also filed the same document at docket 20 as an opposition to Plaintiffs' cross motion.

[7] The D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), requires agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the agency's nondisclosure justification.

[8] The indices were amended versions of those previously filed.  *See* Notice of Filing Vaughn Indices [Dkt. 9].

## B. FOIA[9]

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). Although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (citation omitted; internal quotation marks omitted). Because "disclosure, not secrecy, is the dominant objective of the Act," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), the exemptions are narrowly construed, *see Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

To prevail in a FOIA case, the plaintiff must show that an agency has improperly withheld agency records. *Tax Analysts*, 492 U.S. at 142; *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). The agency must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See, e.g., Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978); *Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010).

FOIA cases are typically decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). A court may award summary judgment in a FOIA case solely on the basis of information provided by the agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

---

[9] A case brought under FOIA presents a question of federal law over which this Court has original jurisdiction. *See* 28 U.S.C. § 1331.

that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn*, 484 F.2d at 826–28. An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation marks omitted).

## III. ANALYSIS

### A. Exhaustion

#### 1. FY12-66 Vaughn Index, Documents 1 and 10 through 26,

With regard to Mr. Mojica's Request FY12-66, Plaintiffs seek the release of documents 1 and 10 through 26, referred to as "Data Runs." [10] *See* FY12-66 Vaughn Index at 1-2, 13-29 (Documents 1, 10-26). FERC withheld these documents pursuant to three different Exemptions: 4, 5, and 7(F). Through an administrative appeal, administrative remedies with regard to Exemption 5 were exhausted but not with regard to Exemptions 4 and 7(F). FERC and Millennium argue that the Court should dismiss the claim for these documents due to failure to exhaust administrative remedies.

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 61 (D.C. Cir. 1990) (*quoted in Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir.

---

[10] While FERC asserts that Plaintiffs waived their claim to FY12-66 documents 10 through 26, *see* Supp. Tao Decl. ¶ 12, Plaintiffs make clear in their Surreply that they "rescind consent" to remove documents 10 through 26 from contention. *See* Pls. Surreply at 2.

2003)).  While the exhaustion requirement is not jurisdictional, *see Hidalgo*, 344 F.3d at 1259,

FOIA requires exhaustion on the principle that permitting judicial review prior to exhaustion

would cause premature interference with agency processes, would deny the court the benefit of

the agency's expertise, and would undermine the creation of an adequate record for review.

*Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) (citing *Weinberger v. Salfi*, 422 U.S. 749,

765 (1975)).  When a claim has not been exhausted, it should be dismissed under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  *Hidalgo*,

344 F.3d at 1260.

Plaintiffs concede that they have not exhausted administrative remedies regarding

Exemptions 4 and 7(F),[11] but they point out that they have sufficiently exhausted administrative

remedies as to Exemption 5.  Administrative exhaustion of their Exemption 5 challenge does not

save their claim here.  Administrative exhaustion applies to issues and not to whole requests.

*See, e.g., Toensing v. Dep't of Justice*, 890 F. Supp. 2d 121, 141 (D.D.C. 2012) (dismissing for

failure to state a claim unexhausted challenges to agency's decision to withhold documents, even

though FOIA requester had exhausted claim that agency's search for documents was

inadequate); *Porter v. CIA*, 778 F. Supp. 2d 60, 68 (D.D.C. 2011) (granting summary judgment

to agency where FOIA requester exhausted claim regarding the adequacy of search but failed to

exhaust claim regarding timeframe of search).  Because FERC relied on Exemptions that were

not administratively appealed by Plaintiffs, Plaintiffs' challenge to FERC's decision to withhold

---

[11] Plaintiffs explain that they did not challenge data withheld under Exemption 7(F) because it
could be obtained through the Commission's CEII regulations, and they did not challenge the
application of Exemption 4, relating to confidential commercial information, because FERC did
not provide sufficient information to permit a "meaningful challenge."  Surreply at 3 nn. 1, 2.
The reasons for Plaintiffs' failure to exhaust are not important here; what is critical is that they
failed to exhaust administrative remedies by failing to appeal FERC's withholding under all
claimed Exemptions, 4, 5, and 7(F).

those records has not been exhausted.  To be clear:  even if the Court were to decide that

Exemption 5 did not apply to FY12-66 Vaughn Index documents 1 and 10-26, Plaintiffs would

not be entitled to their release because FERC also withheld these records under Exemptions 4

and 7(F).  Accordingly, Plaintiffs' claims concerning the release of FY12-66 documents 1 and 10

through 26 will be dismissed under Rule 12(b)(6).

### 2.  FY12-60 Records Withheld Under Exemption 5 or 6

The FY12-60 Vaughn Index, *see* Dkt. 21-3, identifies more than 500 documents

withheld by FERC pursuant to either Exemption 5 or 6.  FERC first responded to FY12-60 on

August 10, 2012, when it notified Mr. Mojica that it would release documents on a rolling basis.

At that time, FERC released twenty-eight documents, thirteen of which were redacted pursuant

to Exemption 6.  FERC also notified Mr. Mojica that any appeal had to be filed within 45 days.

FERC Exhibits, Ex. 19 [Dkt. 12-21] (Aug. 10, 2012 letter from FERC to Mojica) at 5.  Mr.

Mojica did not appeal; instead, he joined Mr. Odland in filing this suit on February 4, 2014.

More than a month later, on March 20, 2013, FERC issued its final response to FY12-60,

releasing some documents while redacting and withholding others under Exemption 5 or 6.

While it is undisputed that Plaintiffs' did not exhaust administrative remedies

with regard to FY12-60 before filing this suit, administrative exhaustion is excused when an

agency does not make its FOIA decision, or at least inform the requester of the scope of the

documents that it will produce or withhold, within the relevant statutory time frame.  *Citizens for

Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 184-85 (D.C. Cir. 2013) (citing 5 U.S.C.

§ 552(a)(6) (providing agencies twenty working days to respond to FOIA requests, which can be

extended up to thirty additional working days).  FERC concedes that its August 10, 2012

response to Request FY12-60 only "partially communicated its determination with respect to

some of [the] requests." FERC Reply at 6. This suit was filed February 4, 2012. FERC issued

its final response to FY12-60 on March 20, 2013. Due to FERC's lack of clarity in its first

response to Request FY12-60 and the long delay before its final response, the failure to exhaust

remedies with regard to FY12-60 is excused under recent D.C. Circuit precedent.

## B. Exemption 5

### 1. Generally

Plaintiffs challenge FERC's withholding of over 500 records in response to

FY12-33 and FY12-60 pursuant to Exemption 5. Exemption 5 protects from disclosure "inter-

agency or intra-agency memoranda or letters which would not be available by law to a party

other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5

encompasses material that is protected under the attorney-client privilege, the attorney work-

product privilege, and the deliberative process privilege. *Coastal States Gas Corp. v. Dep't of

Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S.

132, 149 (1975) (Exemption 5 includes all documents "normally privileged in the civil discovery

context."); *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)

(same).

FERC invoked Exemption 5, via the deliberative process privilege, for numerous

records. *See* FY12-33 Vaughn Index; FY-12-66 Vaughn Index. This privilege protects records

"reflecting advisory opinions, recommendations and deliberations comprising part of a process

by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150.

Exemption 5 covers "recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the policy of

the agency." *Coastal States*, 617 F.2d at 866. Such documents are protected in order to promote

"the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001); *accord Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (the quality of decision-making would be seriously undermined if agencies were forced to operate in a "fish bowl" since open and frank discussion regarding legal or policy matters would be impossible).

To qualify for withholding, material must be both predecisional *and* deliberative. *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005).

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. [The D.C. Circuit's] recent decisions on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (alteration in original) (citations and internal quotation marks omitted). The deliberative process privilege generally does not cover the purely factual portions of documents, except in cases where the factual material "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997). A document may lose its status if it merely memorializes or evidences the policy the agency ultimately adopted on an issue or because the agency used the document in its dealings with the public. *Eugene Burger Mgmt. Corp. v. Dep't of Hous. & Urban Dev.,* 192 F.R.D. 1, 5 (D.D.C.1999) (citing *Coastal States,* 617 F.2d at 866).

### 2. Sufficiency of Vaughn Indices for Determination of Whether Exemption 5 Was Properly Invoked

Plaintiffs complain that the FY12-60 and FY12-33 Vaughn Indices are too vague because they groups records and omits the identities of document authors and recipients. By way

of example, Plaintiffs cite records 90-98 and 99-102 listed in FY12-33 Vaughn Index, *see* Pls.

Surreply at 6-7, which involved data requests and draft data requests:

Documents 90-98

Description
Internal email among lower level staff in the Office of General Counsel and the Office of Energy Projects. The emails regard possible agency data requests to be issued to the applicant in the record. Data requests are questions from the agency to the applicant to clarify portions of the application or to seek additional information from the applicant. The possible data requests cover issues such [as] alternatives to the project, the location of the project, project engineering, and the project capacity.
Dated: September 12, 2011 – October 13, 2011

Exemption Invoked
Exemption 5: Deliberative Process Privilege

Factual Basis for Withholding
The documents consist of intra-agency emails among lower level agency staff. The emails are pre-decisional because they occurred prior to the issuance of the final data requests in the record. The emails also occurred prior to the issuance of the Environmental Assessment in February 2012 or the Order in July 2012. The emails are part of the deliberative process that went into preparing the data requests prior to issuance. These emails have staff's opinion and recommendations about data requests regarding alternatives to the project, project engineering, and project capacity. In doing so[,] staff provides opinions about potential data requests as well [as] information staff would like to obtain from the applicant. Release could chill candid discussion by disclosing lower staff's opinions or disclos[ing] issues that ultimately did not form the basis of the agency's final decision.

Documents 99-102

Description
Internal email among lower level staff in the Office of Energy Projects and the Office of General Counsel regarding data requests issued in the record on November 16, 2012. Data requests are questions from the agency to the applicant to clarify portions of the application or to seek additional information from the applicant. The emails discuss engineering alternatives to the proposed project raised in the data requests.

Dated: November 16-17, 2012

Exemption Invoked
Exemption 5: Deliberative Process Privilege

Factual Basis for Withholding

The documents consist of intra-agency emails among lower level agency staff. The emails occurred prior to the issuance of the Environmental Assessment in February 2012 or the Order in July 2012. The Agency's preparation of data requests is part of the deliberative process to evaluate the application. The emails are deliberative and include staff's assessment and views as to potential engineering issues raised in the data requests that were filed in the record on November 16, 2012. Staff's discussion reflects preliminary opinions about engineering alternatives. Release could chill candid discussion by disclosing opinion[s] or disclos[ing] issues that did not form the basis of the agency's final decision.

FY12-33 Vaughn Index at 34-35.[12] Plaintiffs argue that "[a]bsent names or titles for each author and recipient of each document, the court cannot determine who initiated the communication or the individual's role in the decision-making process, which in turn sheds light on whether a document falls within the scope of deliberative process." Pls. Surreply at 7.

Plaintiffs' complaint of vagueness is baseless. While FERC must prove that information withheld fits within the claimed exemption, *see Military Audit Project*, 656 F.2d at 738; *Vaughn*, 484 F.2d at 826-28, the purpose of a Vaughn index is to provide sufficient information to permit a requester to challenge a withholding and to permit a court to decide whether the record in question was reasonably withheld, *see King v. Department of Justice*, 830 F.2d 210, 218-19 (D.C. Cir. 1987). The agency does not need to justify withholdings

---

[12] Note that Plaintiffs have withdrawn their request for intra-agency emails discussing data requests and draft data requests. *See* Pls. Surreply at 11 ("Now that FERC has satisfactorily identified the content of additional documents in the revised Vaughn Index, Plaintiffs withdraw their request for drafts of the data requests.").

"document-by-document" but instead may do so "category-of-document by category-of-document," so long as its definitions of the categories are sufficient to allow a court to determine whether the claimed exemptions are properly applied. *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994). Further, the actual names of the agency staff who wrote and received these emails is not critical to a determination regarding whether the deliberative process privilege applies. The Vaughn Indices indicate that documents were drafted or received by "staff" or "lower level staff" and the name of the office where they worked. For example, in the FY12-33 Vaughn Index, it states that documents 90-98 are "[i]nternal email among lower level staff in the Office of General Counsel and the Office of Energy Projects." FY12-33 Vaughn Index at 34. This information provided in the Vaughn Indices is sufficient to permit the Court to make a reasoned decision regarding the records withheld.

### 3. Intra-Agency Email Re Motions, Intervention Requests, And Other Filings

Plaintiffs challenge the Exemption 5 withholding of intra-agency email discussing motions, intervention requests, and other filings in the public record of the underlying certificate of need proceeding. *See, e.g*., FY12-33 Vaughn Index at 54-57 (documents 187-90, 192-93, 243-44); FY12-60 Vaughn Index at 28-30 (documents 95-100). The cited documents are emails among FERC staff, opining as to whether individuals properly and timely requested intervention in the FERC proceeding. *See, e.g.*, FY12-33 Vaughn Index at 54, 56. The documents withheld are deliberative, as they contain the internal dialogue among FERC personnel, and they are predecisional as they predate the Agency's July 2012 order regarding intervention. *See id*.

Plaintiffs contend that a "clear statement" of public policy is not shielded by Exemption 5. *See, e.g.*, *Evans v. OPM*, 276 F. Supp. 2d 34, 40 (D.D.C. 2003) (privilege does not protect OPM memo regarding the agency's clear position regarding the adoption of a

government-wide hiring policy).  The Vaughn Indices, however, do not indicate that the records

withheld contain a "clear statement" of public policy.  Instead, the records reflect the views of

staff regarding certain motions, requests for intervention and other filings.  Plaintiffs also insist

that "[i]ntervention serves as the mechanism by which the public participates in FERC

proceedings, and so the public has the right to know how FERC applies existing regulatory

policies when it reviews motions to intervene in contested proceedings that impact hundreds of

community members."  Pls. Surreply at 13.  This objection completely fails to address the

elements of Exemption 5, *i.e*., whether the documents in question were deliberative and pre-

decisional.  Accordingly, judgment will be entered in favor of FERC regarding the Exemption 5

withholding of all intra-agency email discussing motions, intervention requests, and other filings

in the FERC proceeding public record.

### 4. Drafts of the Environmental Assessment

Plaintiffs also seek drafts of the Environmental Assessment and related intra-

agency documents.  The Environmental Assessment was filed in the public record on February

29, 2012.  *See* Supp. Tao Decl. ¶ 23 (citing Environmental Assessment for Millennium Pipeline

Co., LLC's Minisink Compressor Project under CP11-515, at 2-3 (Feb. 29, 2013)).  FERC

withheld emails and drafts of the Environmental Assessment prepared prior to this date.  *See,*

*e.g*., FY12-60 Vaughn Index at 51 (documents 181-82, 184-91) (documents include discussions

of alternatives, edits to analysis, and evaluative criteria).  Some emails discuss draft language for

the Environmental Assessment.  FY12-33 at 64-65 (documents 260-63) (including emails

regarding drafts of the Environmental Assessment and notes, changes and edits).  Other

documents withheld are internal presentations, memoranda, reports, and related drafts, which

provide initial recommendations and analysis.  *Id*. at 73-74 (documents 287-94) (including staff

environmental analysis of alternatives to the proposed project).  These records reflect the "give and take" among FERC staff in preparing the Environmental Assessment.  *See Petroleum Info. Corp.*, 976 F.2d at 1434.

Plaintiffs contend that FERC should be required to segregate and disclose any purely factual data such as the cost of the facility, the level of air and noise emissions, the number of impacted endangered species, and the size of the site.  *See* Pls. Surreply at 14.  Mr. Tao declared that all segregable material was released, *see* Tao Decl. ¶ 14, and that "[t]here is no additional segregable factual information that could be released without revealing protected information," *see id.* ¶ 64.  The Vaughn Indices cited above refer to staff recommendations, edits, and analyses but do not refer to any factual data.  Thus, Plaintiffs merely speculate that the drafts of the Environmental Assessment and related documents include factual data.  The Court is required to accord Mr. Tao's Declarations a "presumption of good faith" that cannot be rebutted by a purely speculative claim.  *See SafeCard*, 926 F.2d at 1200.

### 5.  Drafts of the FERC Order

Plaintiffs also seek preliminary drafts of the FERC Order and related intra-agency documents.   The FERC Order was filed in the public record on July 17, 2012.  *See* Order Issuing Certificate, 140 FERC ¶ 61,045 (July 17, 2012).  Plaintiffs speculate that the drafts likely include segregable factual data because Chairman Wellinghoff's dissent contained "facts about the fuel costs and emissions levels of the proposed project and alternatives" and because Commissioner LaFleur's dissent referenced "other staff environmental assessments and criticized staff analysis."  Pls. Surreply at 15.  An examination of these dissents reveals that the Commissioners relied upon facts contained in the Environmental Assessment which was part of the public record; there is nothing to indicate that the Commissioners relied on drafts or related

documents.  *See* Order Issuing Certificate, 140 FERC ¶ 61,045 (July 17, 2012) (Wellinghoff and

LaFleur dissents).  The Commission itself disavowed the existence of evidence produced by

FERC staff, specifically noting that "Commission advisory staff did not produce independent

'evidence' to be used by the Commission as a basis for its decisions."  Order Denying and

Dismissing Requests for Reh'g, 141 FERC ¶ 61,198, ¶ 73, n.111 (Dec. 5, 2012).

Again, Mr. Tao's Declarations are entitled to a presumption of good faith.

Plaintiffs' mere speculation that segregable factual data is contained in draft FERC orders is

insufficient to rebut this presumption.

### 6.  Intra-agency Emails Regarding Legal Advice

Some documents withheld via the deliberative process privilege are also entitled

to protection by the attorney-client privilege.  *See* FY12-33 Vaughn Index at 53-54, 56, 66, 87,

89  (Documents 173-86, 187-90, 192-93, 264-66, 366-72, 375-70); FY12-60 Vaughn Index at

34, 37, 39-42, 60, 64-65 (Documents 108-110, 118-20, 131-55, 218-24, 242-50, 251-55).  These

documents are intra-agency emails regarding confidential legal advice and they contain "facts

divulged by staff to attorneys in the course of seeking advice" or "discussions among attorneys

in preparation for legal advice to staff or for legal proceedings."  Tao Decl. ¶¶ 33, 47.  The

documents include, for example, communications between the Office of Energy Projects and

attorneys in the Office of General Counsel regarding the legal basis for the privileged treatment

of an exhibit to Millennium's application, *see* FY12-60 Vaughn Index at 34 (Documents 108-

10), and the legal merit of a motion filed in the underlying proceeding, *see id*. at 37 (Documents

118-20).

Plaintiffs avow a need for the names of the parties involved in each

communication in order to determine whether the attorney-client privilege applies.  This

objection is disingenuous, as FERC has clearly provided adequate information indicating that the communications were between FERC staff and attorneys in the Office of General Counsel. *Id.*

### 7. Intra-agency Emails Regarding Congressional Inquiries

Plaintiffs further contend that FERC should release emails between FERC staff and congressional staff. During the course of the underlying FERC proceeding, FERC received congressional requests for information about the project. FERC released such emails in part, redacting certain materials via the deliberative process privilege because they occurred prior to FERC's final response to the congressional inquiry and because the withheld portions included staff recommendations and opinions for proposed responses to congressional inquiries about the project. Supp. Tao Decl. ¶ 25; *see* FY12-33 Vaughn Index at 107 (Documents 430-53); FY12-60 Vaughn Index at 69 (Document 272). FERC explained that the "[e]xchanges are deliberative because Agency personnel are discussing prospective responses to the congressional inquiries about the project. In doing so, the emails include staff recommending responses and providing opinions." *See* FY12-33 Vaughn Index at 107 (Documents 430-53).

Plaintiffs object to the application of Exemption 5 here, asserting without authority that a FERC response to a congressional inquiry does not constitute an agency "decision." Pls. Surreply at 17. The deliberative process privilege is not aimed at the protection of agency decisions; it protects the *deliberative process* from disclosure. *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). Because FERC has shown that the withheld portions of these emails were pre-decisional and deliberative, Exemption 5 was properly invoked.

### 8. Intra-agency Emails Regarding Public Outreach, Public Meetings, and Public Inquiries

Plaintiffs also challenge FERC's application of Exemption 5 to intra-agency emails regarding public outreach, public meetings, and public inquiries. During the course of the FERC proceeding, FERC received public inquiries and held open Commission meetings. A number of records discuss FERC's response to communications from the public. *See, e.g.*, FY12-33 Vaughn Index at 85-87 (Documents 341-72) (emails discussing proper response to calls and emails from public and residents near project); *id*. at 88-89 (Documents 373-79) (emails regarding expected increased public activity at open meetings and how to appropriately deal with same); FY12-60 Vaughn Index at 58 (Documents 211-16) (emails discussing appropriate response to telephone inquiries after July FERC Order was released and rehearing was pending). The withheld emails include FERC's deliberations regarding the appropriate response to public inquiries and public attendance at meetings while the underlying proceeding was pending.

Plaintiffs object, asserting that FERC's application of policy regarding interaction with the public is not pre-decisional or deliberative. Pls. Surreply at 17-18. However, the Circuit has held that an internal discussion regarding the *implementation* of a policy is exempt from disclosure under Exemption 5. *Mead*, 566 F.2d at 256. Mr. Tao did not assert that these emails merely contain FERC policies. Instead, he explained that these emails include FERC staff discussion about how to handle the increased public attention. Such discussions were pre-decisional and deliberative, as they were part of the give and take among staff. They are protected from disclosure under Exemption 5.

### C. Exemption 6

Plaintiffs also challenge FERC's redaction of names and addresses from landowner lists provided in response to FY12-33 and FY12-60. FERC redacted the names and

addresses under Exemption 6, which protects from disclosure "personnel and medical files and *similar files* the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). The term "similar files" is broadly interpreted to mean not merely intimate information but all information that applies to a particular individual. *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010). The type of file containing the information is not relevant. *Wash. Post*, 456 U.S. at 602.

Exemption 6 protects privacy interests so long as they are "substantial," which has been defined broadly as anything "more than *de minimis*." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). Whether the disclosure of names and addresses on a list is a significant threat to the privacy of those listed or is merely a *de minimis* threat "depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 877 (D.C. Cir. 1989). Even if the names and addresses are publically available already, a finding of substantial privacy is not precluded. *See ACLU v. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011) (finding substantial privacy interest in names of criminal defendants and docket numbers even though information was public and readily accessible). Courts recognize that ordinarily "[d]isclosure does not, literally by itself, constitute a harm; it is the requester's (or another's) reaction to the disclosure that can sting." *Horner*, 879 F.2d at 878.

Exemption 6 does not prevent disclosure when the individual's legitimate privacy interests are outweighed by a compelling public interest in disclosure. *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987). Disclosure is in the public interest within the meaning of FOIA if it "sheds light on an agency's performance of its statutory duties." *Dep't of*

*Justice v. Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  No public

interest is served by "disclosure of information about private citizens that is accumulated in

various governmental files [when disclosure] reveals little or nothing about an agency's own

conduct."  *Id*.

In *Horner*, the National Association of Retired Federal Employees (NARFE)

requested, via FOIA, a list of the names and addresses of retired and disabled federal employees

from the Office of Personnel Management.  879 F.2d at 874.  NARFE wanted to use the list of

annuitants to assist in its efforts to recruit new members and to assist in NARFE's lobbying

activities, *see id*. at 874, 879, and NARFE argued that disclosure "would inform the public, at

least in part, where the money is going." *id*. at 879.  However, NARFE was unable to articulate

how releasing the names would reveal anything about the workings of the Government.  "While

we can see how the percentage of the federal budget devoted to annuities . . . and other aggregate

data might be of public interest, disclosure of those facts would not be entailed in (and could be

accomplished without) releasing the records NARFE seeks here."  *Id*.  Exemption 6 applied, as

there was no public interest in disclosure.  The Circuit did "not linger over the balance;

something, even a modest privacy interest, outweighs nothing every time."  *Id*. at 879.

Plaintiffs seek the names and addresses withheld in order to challenge FERC's

assertion in the underlying proceeding that only eighty-four residences will be impacted by

Millennium's construction of the compressor in Minisink.  *See* FERC Exhibits, Ex. 12 [Dkt. 12-

14] (Appeal of Resp. to FY12-33) at 5-7 (cited in Pls. Surreply at 19).  Plaintiffs believe that

there are 190 existing homes, plus forty-nine homes pre-approved for construction, that are

located within a half mile radius of the proposed compressor station and thus that a total of 239

residences will be affected.  Plaintiffs assert that the public interest in disclosure outweighs the

landowners' privacy interest, and they rely on *Columbia Riverkeeper v. FERC*, 650 F. Supp. 2d 1121 (D. Or. 2009). There, the Oregon federal district court ordered FERC to disclose a mailing list of persons in the path of a proposed pipeline, finding that Exemption 6 did not apply because the individuals' privacy interests were outweighed by the public interest in disclosure. Disclosure of was in the public interest because it would reveal whether FERC had complied with the public notice mandate. *Columbia Riverkeeper*, 650 F. Supp. 2d at 1130 (citing 18 C.F.R. § 380.9, which requires FERC to comply with 40 C.F.R. § 1506.6 mandating public notice of NEPA-related[13] hearings); *see also Gilman v. Dep't of Homeland Security*, Civ. No. 09-468(BAH), 2014 WL 984309, at *10 (D.D.C. Mar. 14, 2014) (disclosure of landowners in vicinity of construction of U.S.-Mexico border wall would "shed light" on CBP's planning and construction of wall and thus public interest in disclosure outweighed privacy interests).

Columbia Riverkeeper* does not apply here. "The record already contains ample public document[ation] showing that FERC and Millennium provided notice of the project through local newspapers, open house meetings, and mailings" and through the distribution of "brochures and fliers." Pls. Surreply at 19-20. Instead, Plaintiffs contend that they need landowner names to determine whether "FERC's notification procedures were effective." *Id*. In other words, Plaintiffs do not seek the landowner names and addresses in order to "shed light" on whether FERC *sent* notice; instead, Plaintiffs seek to determine whether notice was *received*. Whether notice was received is irrelevant to FERC's conduct and thus is not a matter of public interest. Because Plaintiffs have not shown that releasing the landowners' names and addresses would reveal anything about the workings of FERC, there is no public interest in disclosure. The

---

[13] NEPA is the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq*.; it requires agencies to take a "hard look" at the environmental consequences of their projects before taking action. *Humane Soc'y of the U.S. v. Johanns*, 520 F. Supp. 2d 8, 16 (D.D.C. 2007) (citing 42 U.S.C. § 4332).

Court "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879. FERC properly invoked Exemption 6 when it withheld the names and addresses from the landowner lists.

### D.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991).

Certain redacted materials were provided to Plaintiffs and other materials were withheld in full. *See generally* Tao Decl.; Supp. Tao Decl. All segregable material was released, *see* Tao Decl. ¶ 14, and material that was withheld was exempt from disclosure or was so intertwined with protected material that segregation was not possible, *see id*. ¶ 64. The Court has reviewed Mr. Tao's declarations and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *See Vaughn,* 484 F.2d at 827. Mr. Tao's Declarations are accorded a "presumption of good faith" and Plaintiffs have not succeeded in rebutting that presumption.

### E.  Administrative Procedure Act

Count II of the Complaint asserts a claim under the Administrative Procedure Act (APA), 5 U.S.C. §§ 553, 701−706, which governs judicial review of final agency actions. The APA, however, subjects agency action to judicial review only if there is no other "adequate

remedy." 5 U.S.C. § 704. To determine whether an adequate remedy exists, courts focus on "whether a statute provides an independent cause of action or an alternative review procedure." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). The alternative remedy is sufficient so long as it provides relief of the "same genre." *Id.* at 1272. Thus, courts have declined jurisdiction over APA claims seeking relief available under FOIA. *See, e.g.*, *Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010). Accordingly, summary judgment will be granted to FERC with regard to Count II of the Complaint, asserting an APA claim.

### F. Filing of Surreply

Plaintiffs filed their original surreply,[14] Dkt. 24, and then filed an errata, with an amended version of the Surreply. *See* Errata [Dkt. 25], Att. 1 (Surreply) [Dkt. 25-1]. FERC objects to Plaintiffs' filing of the corrected Surreply as an Errata because it not only made clerical corrections, it also included additional substantive legal argument. Mot. to Modify the Record in Resp. to Errata [Dkt. 26]. FERC seeks to require Plaintiffs to obtain leave to file the corrected Surreply. *See id.* at 1-2. FERC's point is well-taken, as the purpose of an errata is to correct mere clerical errors. However, FERC and Millennium are not prejudiced by the filing of the corrected Surreply, and thus the Court accepts it for filing. Accordingly, FERC's motion to modify the record will be denied.

### IV. CONCLUSION

For the reasons set forth above, FERC's motion for summary judgment [Dkt. 11] will be granted, and judgment will be entered in its favor. Plaintiffs' cross motion for summary

---

[14] The Court permitted Plaintiffs to file a surreply brief when it approved the briefing schedule for this case. *See* Minute Order Apr. 18, 2013.

judgment [Dkt. 14] will be denied.  FERC's motion to modify the record [Dkt. 26] will be denied.  A memorializing Order accompanies this Memorandum Opinion.

Date:  March 27, 2014

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
